Document Number: 096 Case Number: 02-C-0376-C
United States District Court
Western District of Wisconsin
Joseph W. Skupniewitz
Filed/Received
09/04/2003 02:00:05 PM CDT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____
SUE MERCIER, et al.         )
                            )
       Plaintiffs,        )
                            )
vs.                         )      Case No. 02-C-0376-C
                            )
CITY OF LA CROSSE,          )
                            )
       Defendant.         )
_____)

**REPLY BRIEF OF PROPOSED INTERVENOR
FRATERNAL ORDER OF EAGLES, LA CROSSE AERIE 1254**

**I.    INTRODUCTION**

In opposing the FOE's application to have a say in the disposition of its lawfully acquired property, plaintiffs advance two main arguments: (1) untimeliness, and (2) adequacy of existing representation. Plaintiffs' arguments must be rejected. First, the course which this case has taken is so far outside what a reasonable lawyer — let alone reasonable member of a fraternal organization — could have anticipated, that earlier intervention would have been premature. Second, the City could not have been expected to, and so did not, assert the unique interests of a party who was not even before the court. The plaintiffs fail to refute the FOE's basic and — one would think — self-evident entitlement to intervention in this case.

**II.    TIMELINESS**

In a classic example of whistling past the graveyard, plaintiffs characterize as "Nonsense!" the FOE's position that it had little reason to fear the loss of its property until it learned of the court's July 14, 2003, ruling. Far from "Nonsense!," the FOE's position was grounded in <u>common</u> sense, not to mention a thousand years or so of

1

common law, the Federal Rules of Civil Procedure and the decisions of the U.S. Supreme Court.

As the Second Declaration of FOE secretary Randy Dagnon makes clear, the FOE was under the impression that before somebody could get a court order requiring you to hand over your property to somebody else, they had to sue you first. *See* Second Declaration of Randy A. Dagnon, ¶ 7-12. This bit of common sense is echoed in case law:

> All agree that "[i]t is a principle of general application in anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party by service of process. *Hansberry v. Lee*, 311 U.S. 32, 40, 85 L. Ed. 22, 61 S. Ct. 115, 132, ALR 741 (1940). *See, e.g., Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327, n.7, 58 L. Ed. 2d 552, 99 S. Ct. 645 (1979). *See, e.g., Blonder-Tongue Lab, Inc. v. University Foundation*, 402 U.S. 313, 328-29, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110, 23 L. Ed. 2d 129, 89 S. Ct. 1562 (1969). This rule is part of our "deep-rooted historic tradition that everyone should have his own day in court." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4449, p. 417 (1981) (18 Wright). A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings. *Martin v. Wilks*, 490 U.S. 755, 761-62 (1989).

Since the FOE was not made a party to this litigation, even after plaintiffs amended their complaint, it was not unreasonable of the FOE to think that its property rights were secure. Not having been made a party, the court clearly lacked jurisdiction over the FOE.[1]

But, so plaintiffs argue, the FOE "cannot seriously contend that it was unaware

---

[1]Plaintiffs' understanding of the court's ruling is at odds with the court's. The court orders that the parcel of land "must be returned to the defendant," etc. Opinion and Order, 41. But, if plaintiffs are right that the court has voided the transfer *ab initio*, and that the FOE never acquired any rights in the parcel, who, then, is to do the returning of the parcel? On the other hand, if the court's intent is to order the FOE to return the parcel (the only logical way to read the order), the injunction is void and without effect as to FOE. The court has never asserted jurisdiction over the FOE and, thus, is without power to order it to do anything. *See, Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied.")

that this [forfeiture of FOE's property] was a potential outcome of this case." Brief in Opposition to Motion to Intervene, at 4. One supposes that there is a "potential" in <u>any</u> case that the most fundamental notions of due process, jurisdiction, and adherence to procedural rules will be disregarded, but is this "potential" something people are expected to worry about or take action to prevent? Not according to Justice Brandeis:

> The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger . . . Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that judgment recovered therein will not affect his legal rights. *Chase National Bank v. Norwalk*, 291 U.S. 431, 441 (1934).

From this principle, the Supreme Court, in *Martin v. Wilks*,[2] *supra*, concluded that "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined." 490 U.S. 755, 763; *citing Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) (judgment against Hazeltine vacated because it was not named as a party or served, even though as the parent corporation of one of the parties it clearly knew of the claim against it and had made a special appearance to contest jurisdiction). This is why joinder of necessary parties is <u>mandatory</u> under Rule 19, for, in the words of the *Martin* court:

> Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment. 490 U.S. 765.

Rather than knowledge of "potential" — albeit legally unfathomable — outcomes of litigation triggering a duty to intervene, as plaintiffs would have it, the Supreme Court and the Federal Rules of Civil Procedure place the burden elsewhere:

---

[2]Although the specific factual application of the *Martin* case was superseded by section 108 of the Civil Rights Act of 1991, the general principle cited therein remains binding and the case continues to be routinely cited by both the Supreme Court and the Seventh Circuit. *See, e.g., Ortiz v. Fireboard Corp.*, 527 U.S. 815, 846 (1999); *Fogel v. Zoll, et al.*, 221 F. 3d 955, 964 (7th Cir. 2000).

The parties to a lawsuit presumably know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted. It makes sense, therefore, to place on them a burden of bringing in additional parties where such a step is indicated, rather than placing on potential additional parties a duty to intervene when they acquire knowledge of the lawsuit. *Id.*

But, "Nonsense!", harrumph the plaintiffs; the voiding of the sale and ordering the return of the property "was precisely the relief sought by the plaintiffs." Brief in Opposition to Motion to Intervene, at 3. Even if this statement were true, the proposition that unrepresented bystanders are chargeable with knowledge of the details of amendments to pleadings filed in litigation to which they are not parties is rather dubious. But, in fact, the statement is <u>not</u> true. A review of the precise relief sought is, therefore, in order.

In their Second Amended Complaint, plaintiffs requested the following relief:

A.    A declaratory judgment that the monument in Cameron Park violates the First Amendment and article I, § 18 of the state constitution;

B.    A declaratory judgment that the "putative transfer" of the land on which the monument sits to the FOE is void;

C.    A permanent injunction prohibiting the City from continuing to display the monument in Cameron Park or any city-owned property;

D.    Attorneys' fees;

E.    Other appropriate relief.

Absent from plaintiffs' Second Amended Complaint (as well as from the briefs filed by plaintiffs in connection with the summary judgment motions) is any specific (or general) request that the property be returned to the City. Plaintiffs apparently assume that such a result is a necessary consequence of a finding that the sale of land was void. However, such an assumption is unwarranted for both procedural and substantive reasons.

First, the plaintiffs ask for a "declaratory judgment" on the issue of the validity of the sale. Even assuming *arguendo* that the court could have entered such a declaratory

judgment, such a judgment could only have been just that — a declaration that the sale was void. The remedy to be applied would be another matter entirely. The Declaratory Judgment Act plainly contemplates that any relief beyond the sought after declaration of rights is to be requested and, if warranted, granted <u>separately</u> "after reasonable notice and hearing against any adverse party whose rights have been determined by such judgment." 28 U.S.C. §§ 2201, 2202. Thus, it would not have been unreasonable for the FOE to think that, even if the court were to enter a declaratory judgment directly effecting its ownership rights in a case to which FOE was not made a party, at the very least the FOE would have been given notice and opportunity to be heard pursuant to 28 U.S.C. § 2202 prior to the imposition of <u>any</u> remedy, particularly a remedy as drastic as the one ultimately imposed.

Aside from the skipping of procedural steps which took place here, the plaintiffs also ignore the fact that, on the merits, the remedy imposed here is so unprecedented that no reasonable person would have expected it, let alone assumed it would take place. Research has disclosed no case in which a private property owners' rights have been held immediately forfeit upon a finding of a violation of the Establishment Clause, let alone a case in which the actual or "putative" private property owner was not even a party to the case. About the closest to being on point is *Paulson v. City of San Diego, et al.*, 294 F. 3d 1124 (9th Cir. 2002), in which the Ninth Circuit held that a city's sale to a private owner of a cross and a small parcel of land on which the cross stood violated a section of the California Constitution. In contrast with the case at bar, this finding did not immediately result in the forfeiture of the property. In fact, the court remanded the matter to the district court, noting "No doubt there are several possible ways to cure this violation. We leave it to the parties and to the district court in the first instance, to devise a remedy . . ."

5

*Id.* at 1133. It is noteworthy that, in addition to the fact that the finding of the violation in *Paulson* was deemed to be merely Step One in resolving the controversy, the private property owner was <u>a party</u> to the case, and was expected as such to participate in the devising of a remedy. *Id.*

This is also true in every other case in which a similar situation has arisen. *See, Freedom From Religion v. Marshfield, et al.*, 203 F. 3d 487 (7th Cir. 2000) (Praschak Memorial Fund, the "putative" owner of portion of park was a named defendant); *also*, *Kong v. City and Council fo San Francisco*, 18 Fed. App. 616 (9th Cir. 2001) (private group which bought parcel of public land and cross was named defendant).

Thus, in the present case, even if the FOE is to be charged with anticipating that all procedural safeguards would be ignored, it would still have been reasonable for FOE to believe that immediate forfeiture of its property and other constitutional rights, without further notice and opportunity to be heard, was not even a remote possibility under current law. An earlier motion to intervene to prevent from happening, something which no court has ordered heretofore and which plaintiffs, in their pleadings and briefs, neither asked for or addressed, would have been premature.

## III.     ADEQUACY OF EXISTING REPRESENTATION

Plaintiffs' also argue that the FOE fails to show inadequacy of existing representation of its interests by the City, contending that, because the City's ultimate objective is the same as the FOE's, the FOE must produce evidence of inadequate representation. The cases cited by plaintiffs in support of this proposition involved proposed intervenors whose alleged interest in the cases in question do not come close to the level of interest at issue here: sole and exclusive ownership of the very subject matter of the lawsuit. *Southmark Corp. v. Cagan*, 950 F. 2d 416 (7th Cir. 1991) (petitioner had only a "potential unliquidated

tort claim" and had also filed her own separate lawsuit); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171 (2d Cir. 2001) (discharged law firm's interest in its attorney's fees was "unrelated to the underlying cause of action).

Even if FOE is required to come forward with evidence of inadequate representation of its interests by the City, it has already done so. As noted in FOE's initial Memorandum, the City never argued the substantial property and First Amendment issues involved in plaintiffs' attempt to extinguish or limit FOE's use of its lawfully acquired property. Memorandum at 3-4. In fairness to the City, it could hardly be expected to have done so, since the issues would most appropriately have been addressed in the remedy phase of a case of this nature. Since that phase never took place here, those issues were never addressed.

In addition, if the City is to be deemed the representative of the FOE it bears noting that no one from the City ever gave the FOE a copy of the Second Amended Complaint in which, according to plaintiffs, the risk of FOE's rights was first made known. Second Declaration of Randy A. Dagnon, ¶ 10. Thus, leaving aside the clear teaching of the Supreme Court that the burden in this regard is a "minimal" one, *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538, n. 10 (1972), the FOE has shown actual inadequacy of representation in this matter.

## CONCLUSION

Plaintiffs have failed to refute the FOE's showing that they are entitled to intervene in this matter. Accordingly, the court should grant FOE's motion and direct the parties to respond to FOE's contemporaneously filed Motion to Alter or Amend Judgment.

Dated September 4, 2003.

    Michael D. Dean, WI Bar No. 01019171
    Suite 125
    20975 Swenson Dr.
    Waukesha, WI 53186-4065
    (262) 798-8044

    Francis J. Manion
    Geoffrey R. Surtees
    American Center for Law and Justice
    6375 New Hope Road
    New Hope, KY  40052
    (502) 549-7020

    Counsel for Intervenor-Defendant
    Fraternal Order of Eagles Aerie 1254